# Holiday Supermarkets, Inc. v. Sackett Development Co.

*Kelly Scheese, Jay D. Branderbit, Justin E. Proper, Samuel S. Dalke* and *Shane R. Heskin*, for plaintiff.

*Jay D. Marinstein, Melissa McCoy Gormley, Lisa M. Rutenberg, Peter A. Lesser, Patrick J. Troy, Sabrina L. Reliford, Carolyn M. Hazard* and *Robert C. Heim*, for defendants.

*McInerney, J.*, Feb. 11, 2014—

Plaintiff Holiday Supermarket, LLP ("Holiday") operates a retail supermarket in the Mayfair Shopping Center in Philadelphia, Pennsylvania (the "Shopping Center"). Defendant Dollar Tree Stores, Inc., ("Dollar Tree") also operates a retail store in the Shopping Center. Defendant USRP I, LLC ("USRP") owned the Shopping Center and leased the retail space to Holiday and Dollar Tree (the lease between USRP and Holiday being referred

to as the "Holiday Lease"), defendant Regency Realty Corp., Inc. ("Regency") was the property manager of the Shopping Center for USRP.

Holiday and USRP are not the original parties to the Holiday Lease. Rather, in March 1992, Sackett Development Company ("Sackett"), as the "LESSOR," entered into a lease agreement with Fleming Foods East, Inc. ("Fleming"), as the "LESSEE," for space as the anchor tenant in the Shopping Center. (Holiday Lease p.1.) Originally, Holiday entered into a sublease with Fleming whereby Holiday leased Fleming's space at the Shopping Center to operate a Shop 'N Bag Supermarket. Following Fleming's bankruptcy, however, the United State Bankruptcy Court for the District of Delaware issued an order on December 8, 2003 that authorized Holiday's assumption of the lease. USRP, on the other hand, was a successor-in-interest to Sackett, having assumed the Holiday Lease from Sackett's successor-in-interest, First Washington Realty Limited Partnership, when it purchased the Shopping Center.

On July 7, 2009, Holiday filed suit against Dollar Tree, USRP, and Regency for, among other things, breach of contract.[1] In the complaint, Holiday alleged Dollar Tree operated as a "retail supermarket of any nature" in the Shopping Center in violation of a restriction contained in the Holiday Lease, which provided in part that "LESSOR covenants that it will not permit any person other than the LESSEE to operate a retail supermarket of any nature in

---

1. Holiday also sued the original developer and lessor of the Shopping Center, Sackett.

the Shopping Center...." (Compl. ¶¶ 7, 18; Holiday Lease § 17.1 (the "Holiday Restriction").) Holiday alleged this breach caused it "damages including, but without limitation, serious financial and pecuniary harm which includes, but is not limited to, loss of income, loss of funds, loss of opportunity income, out of pocket expenses, finance charges, and other related costs." (Compl. ¶24.) Holiday did not seek any equitable or injunctive relief against USRP or Regency and, on September 28, 2009, Holiday filed an amended complaint that omitted Dollar Tree as a defendant.

On October 9, 2009, Dollar Tree filed a petition to intervene as a party defendant in Holiday's action against Landlord because "the allegations in the Amended Complaint are based on the contention that Dollar Tree continues to sell items and goods in alleged violation" of the Holiday Restriction. (Emergency Petition to Intervene ¶36.) Holiday did not oppose the petition, and by order dated October 14, 2009, the late Honorable Albert Sheppard, Jr. allowed Dollar Tree to intervene. The trial of this case was later bifurcated into liability and damages phases upon stipulation of the parties.

After completing liability discovery, the parties filed cross-motions for summary judgment on or about September 20, 2010 on the issue of whether the subject Dollar Tree store had acted as a supermarket of any nature in violation of the Holiday Restriction. On November 10, 2010, Judge Sheppard entered orders denying Holiday's motion, granting USRP and Dollar's motions, and declaring that Dollar Tree had not been operating as a supermarket and had not violated Holiday Restriction. On

December 9, 2010, Holiday appealed. And on December 13, 2010, USRP executed a special warranty deed in which it transferred all of its rights, title, and interest in the Shopping Center to WP Mayfair Associates, L.P. ("WP Associates") for the sum of $18,500,000.

On December 9, 2011, the Superior Court of Pennsylvania reversed the granting of summary judgment in favor of USRP and Dollar Tree and remanded the action back for proceedings consistent with its opinion. *Dollar Tree Stores, Inc. v. Holiday Supermarkets, Inc.*, 2 EDA 2011 (Pa. Super. Ct. Dec. 9, 2011)(unpublished memorandum). In its opinion, the Superior Court noted that by filing cross motions for summary judgment, the parties "maintained to the trial court that the [Holiday Restriction was] clear in [its] reflection of the parties' intent relative to the scope of the activity reserved/restricted thereby." *Id.* at 10-11. The court, however, held "the term supermarket of any nature is reasonably susceptible of different constructions and consequently is ambiguous" and concluded "resolution of the ambiguity require[d] the finder of fact to determine the parties' actual intent after considering the surrounding circumstances, the situation of the parties, the objects they apparently have in view, ...the nature of the subject-matter of the agreement, and other relevant extrinsic evidence[.]" *Id.* at 16-17 (quotations omitted).

With this direction, the instant matter proceeded to a jury trial on January 23, 2013 on the issue of whether USRP and/or Regency were liable to Holiday for breach of contract for allowing Dollar Tree to operate a supermarket of some nature in the Shopping Center. Following the trial, the jury returned a liability verdict in

favor of Holiday and against USRP and Regency. With the damages discovery having now been completed, Dollar Tree, USRP, and Regency have now filed for summary judgment on the issue of whether the limitation of liability provision in the Holiday Lease precludes Holiday from obtaining an enforceable damages award against USRP or Regency. According to the defendants, they are entitled to summary judgment because the clause only permits enforcement of any judgment against USRP's interest in the Shopping Center and USRP no longer has any interest in the Shopping Center as it long ago sold it to the current owner and lessor, WP Mayfair.

The limitation of liability clause at issue, which was entered into in 1992 by Sackett as "LESSOR" and Fleming as "LESSEE," states in its entirety that:

Anything contained in this Lease to the contrary notwithstanding, LESSEE agrees that subsequent to: (a) the completion of all construction and/or punch list items, (b) the issuance of a permanent certificate of occupancy (or its equivalent) and (c) the LEASE COMMENCEMENT DATE, LESSEE shall look solely to the estate and property of the LESSOR in the land and buildings Comprising the Shopping Center of which the premises forms a part, together with any insurance or condemnation proceeds to which LESSOR may be entitled, but only as and when such proceeds are received by LESSOR, for the collection of any judgment (or other judicial process) requiring the payment of money by LESSOR for any default or breach by LESSOR of any of its obligations under this Lease subject, however,

to the prior rights of any ground or underlying landlord or the holder of any mortgage covering the Shopping Center or of LESSOR'S interest therein. It is agreed that LESSOR (and its shareholders, venturers, and partners, and their shareholders, venturers and partners and all of their officers, directors and employees) will never be personally liable for any such judgment. No other assets of the LESSOR shall be subject to levy, execution or other judicial process for the satisfaction of LESSEE'S claim. The provisions contained in this paragraph are not intended to, and will not, limit any right that LESSEE might otherwise have to obtain legal (but not including personal collection or enforcement of any judgment against LESSOR, its shareholders, venturers, partners, and their shareholders, venturers, and partners and all of their officers, directors and their employees or their assets beyond their respective or collective interests in the land and buildings comprising the buildings comprising the Shopping Center) equitable or injunctive relief against LESSOR, or to offset or deduct from rent.

(Holiday Lease § 19.24.)

Based on this limitation of liability clause, Dollar Tree argues in its motion that summary judgment is appropriate because there is no dispute that USRP no longer holds any interest in the Shopping Center. Citing cases such as *Fork Union Medical Investors Ltd. Partnership v. HR Acquisition of Virginia Ltd. Partnership*, 2012 WL 5951602 (Tenn. Ct. App. Nov. 28, 2012), Dollar Tree argues that "[w]hile there are no Pennsylvania cases directly on point, this result has widespread support from cases decided in

other jurisdictions in which the court has enforced nearly identical lease provisions limiting a landlord's liability for a default after it sold its interest in the subject property." (Dollar Tree's Mot. for Summ. J. (Mem.) pp. 7-8.)

USRP and Regency essentially made the same arguments as Dollar Tree in their motion for summary judgment. These defendants, however, also more explicitly argue this clause "bars any continued claim against Regency." (USRP's Mot. for Summ. J. (Mem.) p. 7.) These defendants note Holiday argued at trial that Regency was liable to it for breach of contract because "Regency is an affiliated company of USRP" and then proceed to argue that "[w]hile [they] disagree that Regency is liable to Holiday at all because it is not-and never has been-a party to the [Holiday] Lease, Section 19.24 nonetheless precludes assessing any damages against Regency or the collection of any liability judgment against Regency... because Holiday is limited to seeking damages [against] the landlord's interest in the property." (USRP's Mot. for Summ. J. (Mem.) pp.7-8.)

In response to the defendants' motions, Holiday made a number of arguments as to why summary judgment is inappropriate. First, Holiday argues "there are material issues of fact concerning the limitation of liability provision." (Holiday's Resp. to Dollar Tree's Mot. (Mem.) p.6.) Specifically, Holiday argues Pennsylvania law holds "that limitation of damages provisions are not enforceable to limit damages for breaches of contract that are intentional, willful, wanton, reckless or otherwise in bad-faith" and "there is substantial evidence in the record

that [USRP] knowingly and intentionally allowed" Dollar Tree to operate a supermarket of some nature in the Shopping Center. (Holiday's Resp. to Dollar Tree's Mot. (Mem.) pp. 6-7 (quotations and emphasis omitted).)

Second, Holiday argues:

Section 19.24 expressly allows...Holiday to collect a judgment against [USRP's] interest in the [S]hopping [C]enter. Dollar Tree admits that the [S]hopping [C]enter was sold to WP Realty for $18.5 million dollars while this litigation was ongoing. These proceeds of sale clearly are part of the estate and property of [USRP] for purposes of Section 19.24. Indeed, Section 19.24 is intended to limit liability personally and to protect other properties owned by [USRP]. It is not designed to protect the sales proceeds for the subject property in the event of a sale.

(Holiday's Resp. to Dollar Tree's Mot. (Mem.) pp. 7-8.)

Third and forth, Holiday argues "Holiday can enforce the judgment against WP Realty" and USRP has "never divested its interest in the Shopping Center as it relates to this lawsuit." (Holiday's Resp. to Dollar Tree's Mot. (Mem.) pp. 8-10.) Regarding its third argument, Holiday cites to cases such as Resolution Trust Corp. Warwick Nurseries, Ltd., 675 A.2d 730 (Pa. Super. Ct. 1996) and states "[t]he concept that purchasers of property take subject to the results of pending litigation of which they are aware is well-recognized under Pennsylvania law." (Holiday's Resp. to Dollar Tree's Mot. (Mem.). p. 8.) Holiday then states, "the evidence is undisputed that WP Realty had actual knowledge of this lawsuit prior to

purchasing the [S]hopping [C]enter...." (Holiday's Resp. to Dollar Tree's Mot. (Mem.) p. 8.) Holiday further states it "did not need to file a lis pendens because WP Realty had actual knowledge of the lawsuit...." (Holiday's Resp. to Dollar Tree's Mot. (Mem.) p. 10.)

Regarding its fourth argument, Holiday asserts that because USRP "agreed to indemnify WP Realty for damages arising out of this lawsuit[,]" USRP has not completely divested itself of an interest in the Shopping Center as it relates to this litigation and/or it can recover against USRP as an intended third party beneficiary of the indemnification agreement. (Holiday's Resp. to Dollar Tree's Mot. (Mem.). p. 10.)

In reply, the defendants primarily refute there are issues of material fact that preclude summary judgment by arguing that "limitation of liability clauses are enforceable under Pennsylvania law unless the plaintiff can establish fraudulent or tortious conduct, unconscionability, or an overriding public interest" and that "[n]one of these exceptions apply here." (See, e.g., Dollar Tree's Reply p. 6.) The defendants, however, also make a number of other arguments, including that the language of the lease precludes Holiday from collecting any money judgment from the proceeds of USRP's sale of the Shopping Center to WP Realty as the clause limits recover to the actual estate and property in the land and buildings comprising the Shopping Center and does not include proceeds from sale.

On January 15, 2014, this court held oral argument on the defendants' motions for summary judgment. During

the argument, counsel for Dollar Tree invited the court to look at the cases it cited on page eight of its brief such as Fork Union Medical Investors; the cases which it asserts supports summary judgment because there is no dispute that USRP no longer holds any interest in the Shopping Center. The court accepted counsel's invitation and issues this opinion in support of its denial of summary judgment as to Dollar Tree and USRP.

"The entry of summary judgment is only proper where the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-51 (Pa. Super. Ct. 1999). "[I]n determining whether summary judgment should enter, the record is...viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Manzetti v. Mercy Hosp. of Pittsburgh*, 776 A.2d 938, 945 (Pa. 2001). Additionally, summary judgment should only be granted "in those cases which are free and clear from doubt." *Washington v. Baxter*, 719 A.2d 733, 737 (Pa. 1998).

This court agrees with the defendants that the issue of whether the breach of contract in this case was intentional or knowing did not preclude summary judgment as limitation of liability clauses may be enforceable in Pennsylvania even where the breach of contract was intentional. *See generally Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.,* 496 A.2d 840 (Pa. Super. Ct.

1985) (agreeing that "the motive for breaching [a] contract is not important" and that "punitive damages will not be assessed for a mere breach of contractual duties, where no recognized trespass cause of action, pleaded by the plaintiff, arose out of the same transaction.") Rather, it is when a plaintiff can also establish some sort of fraudulent or tortious conduct, unconscionability, or an overriding public interest that a limitation of liability clause may not be enforced in whole or in part.[2] *See, e.g., John B. Conomos, Inc. v. Sun Co., Inc.,* 831 A.2d 696, 708 (Pa. Super. Ct. 2003) (among other things, noting that "[n]otwithstanding the characterization of a breach as a bad faith breach or otherwise, the contract may prescribe

---

2. A leading treatise, Corbin on Contracts, has similarly, though more fully but relatedly, stated:

One,

[W]ith certain exceptions, the courts see no harm in express agreements limiting the damages to be recovered for breach of contract. Public policy may forbid the enforcement of penalties against a defendant, but it does not forbid the enforcement of a limitation in the defendant's favor. ***[The other party] may later regret their assumption of the risk of non-performance in this manner, but the courts generally let them lie on the bed they made. While exceptions are carved out for certain public service or other essential services, the enforcement of such limitation is particularly appropriate where contracts are negotiated rather than adhesive.

Two,

If the breach of contract is also a tort or involves the commission of a tort, a provision limiting the liability in damages for the breach may not be operative as a limitation of the liability in tort. This involves not only a problem of interpretation of the provision but also a problem of public policy. Under some circumstances a bargained for exemption from liability for tortious conduct is held to be against the public interest and illegal.

And three,

The general rule of exculpatory agreements is that a party may agree to exempt another party from tort liability if that tort liability results from ordinary negligence. Courts[, however,] do not enforce agreements to exempt parties from tort liability if the liability results from that party's own...recklessness[] or intentional conduct.

Corbin on Contracts §§ 58.16, 85-18 (revised edition)(footnotes omitted).

for the remedies available for such breach" and that "[t]o the extent that the cause of action and remedies remain within the province of contract law, the contract may be binding in the determination of the consequence of a breach.")(citations omitted).

This court, however, disagrees with the defendants that they are all entitled to summary judgment as the cases they cited that addressed provisions that limited liabilities following a default by a landlord, in addition to not being binding, are distinguishable. With *Fork Union Medical Investors Ltd. Partnership v. HR Acquisition of Virginia Ltd.* Partnership being the most on fours with the instant case, we will address that case in detail.

In that case, a landlord, Quality Links L.P., leased two nursing home properties in Virginia to a tenant, Care More, Inc, in 1989. 2012 WL 5951602 at *1. Paragraph 22 of the leases contained the following provision, which was called "Status of Landlord." *Id.* The provision provided:

A. Anything in this Lease to the contrary notwithstanding. Tenant agrees that Tenant shall look solely to the estate and interest of Landlord in the Demised Premises for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord in the event of a default or breach by Landlord with respect to any of the terms, conditions and covenants of this Lease to be performed by Landlord, subject, however, to the prior rights of any mortgagee to all or any part of the Demised Premises. Tenant acknowledges and agrees that no other assets of Landlord, its agents and designees, its partners or

its affiliates shall be subject to levy, execution or other judicial process for the satisfaction of Tenant's claim.

B. Landlord shall have the absolute and unfettered right to sell or transfer all or part of its interest in the Demised Premises and Tenant acknowledges and agrees that upon such sale or transfer the term "Landlord" shall mean only the new owner or transferee and the transferor shall be automatically relieved of and discharged of all further liability with respect to the performance of any of the terms, conditions and covenants of this Lease, and Tenant agrees to thereafter look only to such purchaser or transferee of Landlord's interest in the Demised Premises for the performance of Landlord's obligations hereunder.

*Id.*

In 1991, Care More, Inc. assigned its leasehold interests for both properties, which ended up in the hands of the plaintiffs. *Id.* In 1998, HR Acquisitions of Virginia Limited Partnership, an affiliate of Healthcare Realty Trust, assumed ownership of both properties, thus becoming the "landlord" under the lease agreements. *Id.* at *2. Thereafter, a rent dispute arose involving the two Virginia properties and a claim of overpayment of rent, and in 2006, the plaintiffs filed suit in state court in Tennessee against HR Acquisitions; Healthcare Realty Trust; and HRT Holdings, Inc. *Id.* In 2007, HR Acquisitions sold all of its interests in the two properties to Ruxton Village Holdings Company, LLC. In 2011, the defendants filed a motion for summary judgment arguing Paragraph 22 of the original leases barred the plaintiffs' claims, which was

granted by the trial court. *Id.*

On appeal, a Tennessee appellate court affirmed. First, the court noted that because the parties treated the clause as an exculpatory clause, so would it.[3] *Id.* at *3. Having stated that exculpatory clauses are enforceable when they (1) do not violate public policy, (2) are plain and easily understood, and (3) clearly and unequivocally release the party from precisely the type of liability alleged by the plaintiff, the Tennessee court held: "It [was] hard to imagine how the parties could have made the limitations on recovery any plainer. Paragraph 22 'clearly and unequivocally' relieves the defendant[s] from any liability if they are no longer the landlord of the properties covered by the leases." *Id.*

The Tennessee court also addressed the plaintiffs' argument that if the court held as such, the plaintiffs would have no remedy since HR Acquisitions had sold its interest in the nursing homes without notifying the new owner that the properties were subject to the plaintiff's claims. *Id.* at *4. In response, the court stated that it was "not entirely sure that the record show[ed] that the new owners are bona fide purchasers without notice of the [plaintiffs'] rights to subject the properties to their claims." *Id.* The court, however, also stated in granting summary judgment, assuming that was true: "the [plaintiffs] had from November of 2003 to March of 2007-while [HR Acquisitions] still owned both properties--to assert a lien

---

3. It would also make sense to treat Section 19.24 in this case as an exculpatory clause because the defendants reading of the section would not limit the landlord's liability in the event of sale, but rather extinguish it.

lis pendens on the nursing home properties. That action would have put any purchasers on notice that the properties were subject to a claim for the overpaid rent." *Id.*

In this case, the similarities to Fork Union end with Subparagraph A of Paragraph 22. While the court in Fork Union held that "[i]t [was] hard to imagine how the parties could have made the limitations on recovery any plainer" and that "Paragraph 22 'clearly and unequivocally' relieve[d] [HR Acquisitions] from any liability if [it was] no longer the landlord[,]" everything that made that clear was contained in Subparagraph B, to which Section 19.24 has no equivalent.

First, Fork Union's Subparagraph B specifically addresses the issue of sale and states the landlord "shall have the absolute and unfettered right to sell or transfer all or part of its interest in the [property]." Subparagraph B also specifically states the tenant "acknowledges and agrees that upon such sale or transfer the term "Landlord" shall mean only the new owner or transferee and the [old landlord] shall be automatically relieved of and discharged of all further liability with respect to the performance of any of the terms, conditions and covenants of [the] [l]ease, and [the tenant] agrees to thereafter look only to such purchaser or transferee of [the old landlord's] interest in the [property] for the performance of [the old landlord's] obligations hereunder."

Section 19.24 does none of these things. Rather, Section 19.24: is written from the perspective of the parties' having a present relationship; the landlord having a present interest in the land and buildings comprising the

Shopping Center;[4] and makes no mention of what happens in the event of a sale. Moreover, if Subparagraph A so clearly relieved the landlord from any liability if they sold the property covered by the lease, why add Subparagraph B? A subparagraph b would not be necessary. As such, this court will not grant USRP and Dollar Tree summary judgment because unlike Section 22 in Fork Union, Section 19.24 in this case does not unambiguously provide for such a result.[56]

The court, however, will grant summary judgment as to Regency. Regency was found liable for allowing Dollar Tree to operate as a supermarket of any nature in violation of Section 17.1 of the Holiday Lease. Section 19.24, however, limits the collectability of breach of lease claims to the then landlord/"LESSOR." Regency was not the landlord/"LESSOR" under the Holiday Lease at the time in question, USRP was. Summary judgment is, therefore, properly granted as to Regency. Cf. R.R.S. II Enterprises, Inc. v. Regency Assocs., 646 N.E.2d 56, 60-61 (Ind. Ct. App. 1995) (under a limitation of liability provision that is similar in this respect, limiting a tenant's breach of lease claims to the landlord, Regency Village Common,

4. For example, '[n]o other assets of the LESSOR shall be subject to levy, execution or other judicial process for the satisfaction of LESSEE'S claim[,]" presupposes USRP" LESSOR" has assets to satisfy Holiday's/ LESSEE'S claim in the absence of language later specifically stating what happens in the event of a sale.

5. The court, however, would be willing to say USRP's liability is capped at $18.5M less any prior mortgages it had to pay as such a reading of Section 19.24 would appear to effectuate the intent of the parties' to limit the landlord's liability to its investment in the Shopping Center and protect its other assets.

6. These defendants were also not entitled to summary judgment because it was not conclusively established that Holiday cannot enforce the judgment against WP Realty as a purchaser with notice.

Ltd., and affirming the trial court's dismissal of individual employees and a related entity).

## ORDER

And now, this 11th day of February, 2014, upon consideration of defendant Dollar Tree Stores, Inc.'s motion for summary judgment filed under control number 13103567 and defendants Regency Realty Corp., Inc. and USRP I, LLC's motion for summary judgment filed under control number 13110024, plaintiff Holiday Supermarkets, Inc.'s responses in opposition, any replies thereto, and oral argument, and in accord with the opinion issued simultaneously hereto, it is ordered and decreed that the motions are denied as to defendants Dollar Tree Stores, Inc. and USRP I, LLC and granted as to defendant Regency Realty Corp., Inc.